UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES R. JR.,

                                                     **Plaintiff,**

                             v.                                      5:17-CV-1387 (FJS)

COMMISSIONER OF SOCIAL SECURITY,

                                                     **Defendant.**
_____

**APPEARANCES**                                         **OF COUNSEL**

**LAW OFFICES OF STEVEN R. DOLSON**      **STEVEN R. DOLSON, ESQ.**
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **JOANNE J. PENGELLY, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

James R., Jr. ("Plaintiff") brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for benefits. *See generally* Dkt.

Nos. 1, 10. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 10, 13.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on May 5, 2014, alleging disability as of June 13, 2011. *See* Dkt. No. 9, Administrative Record ("AR"), at 12.[1] The Social Security Administration initially denied Plaintiff's application on September 2, 2014, and affirmed said denial on December 9, 2014. *See id.* Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on December 30, 2014. *See id.* A hearing was held on January 6, 2017, before ALJ Kenneth Theurer, at which Plaintiff and Joseph Atkinson, a vocational expert, testified. *See id.* Attorney Gregory Fair represented Plaintiff at the hearing. *See id.*

On February 9, 2017, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record . . ."

1) Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2016."

2) Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 13, 2011 through his date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*)."

3) "Through the date last insured, [Plaintiff] had the following severe impairments: disorder of the cervical spine; and disorder of the lumbar spine (20 CFR 404.1520(c))."

4) "Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."

---

[1] All references to page numbers in the Administrative Record are to the Bates Stamp number at the bottom of those pages. All references to page numbers in other documents in the record are to the page numbers that the Court's Electronic Case Filing System generates.

5) "[T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) . . . ."

6) "Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565)."

7) "[Plaintiff] was born on June 12, 1968 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563)."

8) "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564)."

9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."

10) "Through the date[] last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a))."

11) "[Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from June 13, 2011, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g))."

*See* AR at 14-21 (citations omitted).

The ALJ's decision became the Commissioner's final decision on November 13, 2017, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 1-4. Plaintiff then commenced this action on December 27, 2017, and filed a supporting brief on May 31, 2018. *See* Dkt Nos. 1, 10. Defendant filed a response brief on August 1, 2018. *See* Dkt. No. 13. Plaintiff filed a reply to Defendant's response brief on October 2, 2018. *See* Dkt. No. 16.

# III. DISCUSSION

## A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not currently engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ

determines if he can perform other work, in light of his residual functional capacity ("RFC"), age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation and other citations omitted).

## B. Plaintiff's motion

In support of his motion, Plaintiff argues that the ALJ's decision was not supported by substantial evidence as required under 42 U.S.C. § 405(g) and that the ALJ committed reversible error in three ways: (1) by failing to follow the treating physician rule; (2) by failing to explicitly consider all of the statements related to Plaintiff's ability to do work-related activities made by acceptable medical sources; and (3) by failing to address actual conflicts between the vocational expert testimony and the Dictionary of Occupational Titles ("Dictionary"). *See* Dkt. No. 10, Plaintiff's Brief, at 4-5.

### *1. Treating physician rule*

Plaintiff asserts that the ALJ committed reversible error by failing to give controlling weight to Plaintiff's treating physician without good reason. *See* Dkt. No. 10, Plaintiff's Brief, at 5. "'The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence.'" *Tavarez v. Barnhart*, 124 F. App'x 48, 49 (2d Cir. 2005) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); 20 C.F.R. § 404.1527(d)(2)). "An ALJ is required to provide 'good reasons'

to accord the opinion other than controlling weight." *Id.* (citing *Halloran*, 362 F.3d at 32; 20 C.F.R. § 416.927(d)(2)). "Reasons that are conclusory fail the 'good reasons' requirement." *Woodson v. Colvin*, No. 15-CV-2353 (RLE), 2016 WL 4362105, *10 (S.D.N.Y. Aug. 10, 2016) (citation omitted). "The ALJ is not permitted to arbitrarily substitute his own judgment of the medical proof for the treating physician's opinion." *Id.* (citing *Balsamo*, 142 F.3d at 81). Moreover, "an ALJ 'cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record[.]'" *Id.* (quoting *Burges*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79)).

In denying Plaintiff's claim, the ALJ gave Plaintiff's treating physician's opinion only partial weight because "his opinion [was] not supported with explanation and inconsistent with the longitudinal record as well as [Plaintiff's] activity level. For example, it is difficult to reconcile Dr. Pastore's extreme limitations with [Plaintiff's] use of a gas powered chain saw and moving a refrigerator." *See* AR at 19. The ALJ also stated that Plaintiff's treating physician "completed a medical source statement and . . . an application for a disabled parking permit on [Plaintiff's] behalf." *See id.*

In coming to his conclusion, the ALJ referred to only two medical forms that Plaintiff's treating physician completed but wrongfully ignored numerous others that he completed during the period from Plaintiff's alleged onset date through his date last insured. *See, e.g.,* AR at 625, 680. Plaintiff submitted more than 250 pages of medical history from his treating physician. In each of these documents, Plaintiff's treating physician consistently opined that Plaintiff had extremely limited functional abilities due to pain, weakness, and tingling as a result of Plaintiff's spinal issues and that he was totally disabled from work-related activities. *See id.* In contrast to the ALJ's finding, Plaintiff's treating physician provided explanations and examination reports to

support these opinions. Moreover, the treating physician's opinions were consistent with that of multiple other medical examiners in the record. *See, e.g.,* AR at 755, 822.

The ALJ also erred when he relied on two examples where Plaintiff allegedly performed physical activity inconsistent with Plaintiff's treating physician's opinion as a reason to deny the opinion controlling weight. However, the Court finds that both examples were consistent with the treating physician's medical opinion. Plaintiff explained in his testimony that the chain saw he used was at most five pounds and that he further injured himself performing both activities. Plaintiff's treating physician repeatedly stated that Plaintiff could occasionally lift between one and ten pounds but never more than ten with either arm. Although Plaintiff's treating physician's medical opinion was consistent with Plaintiff's admitted activity level, the ALJ arbitrarily concluded otherwise. As stated above, "[t]he ALJ is not permitted to arbitrarily substitute his own judgment of the medical proof for the treating physician's opinion." *Woodson*, 2016 WL 4362105, at *10 (citing *Balsamo*, 142 F.3d at 81). The Court finds that the ALJ wrongly gave Plaintiff's treating physician's opinion only partial weight without providing good reasons for doing so and that the ALJ substituted his own judgment in determining Plaintiff's RFC.[2]

---

[2] Alternatively, Plaintiff argues that the ALJ failed to explicitly consider the factors outlined in 20 C.F.R. § 404.1527(c) as the Second Circuit requires, *see* Dkt. No. 10, Plaintiff's Brief, at 8 (citing *Greek v. Colvin,* 802 F.2d 370, 375 (2d Cir. 2015). The Court does not need to address this argument in light of its conclusion that the ALJ failed to provide Plaintiff's treating physician's opinion the deference required.

### *2. Failure to address all medical source statements*

Plaintiff contends that the ALJ committed reversible error by failing to address all medical source statements from acceptable medical sources within the record. *See* Dkt. No. 10, Plaintiff's Brief, at 10. In addition to Plaintiff's treating physician, Plaintiff points to Dr. Binit Shah's Treatment Records, in which he stated, "I believe that it will be difficult for [Plaintiff] to find meaningful gainful employment." *See* AR at 822. Plaintiff also points to Treatment Records from Syracuse Orthopedic Specialist Richard DiStefano, M.D., who, on multiple occasions, stated that Plaintiff's "Disability-Work-School Status" was "TOTAL DISABILITY." *See id.* at 756, 759, 762.

According to SSR 06-03p,[3] the Commissioner "will consider all of the available evidence in the individual's case record" when making a determination or decision on disability. However, the failure to address these opinions constitutes harmless error because an opinion on disability is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). A physician's opinion on issues reserved for the Commissioner is not entitled to any weight. *See Taylor v. Barnhart,* 83 F. App'x 347, 349 (2d Cir. 2003) (citation omitted). Therefore, the Court finds that this argument is meritless.

---

[3] SSR 06-03p was rescinded on March 27, 2017, after the ALJ's decision in this case.

### *3. Failure to resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles[4]*

Plaintiff argues that the ALJ committed reversible error by failing to resolve actual conflicts between the occupational evidence that the vocational expert provided and the occupational information supplied by the Dictionary of Occupational Titles ("Dictionary") as required under SSR 00-4p. *See* Dkt. No. 10, Plaintiff's Brief, at 11. According to SSR 00-4p, ALJs must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts or vocational specialists] and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations[.]" SSR 00-4p, 2000 WL 1898704, at *1. "[W]henever the Commissioner intends to 'rely[] on [a] vocational expert's testimony,' [he or] she must identify and inquire into all those areas 'where the expert's testimony *seems to* . . . conflict with the *Dictionary*." *Lockwood v. Comm'r of Soc. Sec. Admin.,* 914 F.3d 87, ___ (2d Cir. 2019) (quoting *Pearson v. Colvin,* 810 F.3d 204, 209 (4th Cir. 2015) (emphasis added)). SSR 00-4p "requires the Commissioner to 'obtain a reasonable explanation' for any 'apparent' – even if non-obvious – conflict between the *Dictionary* and a vocational expert's testimony." *Id.* (citation omitted).

At the hearing, the ALJ asked the vocational expert to provide examples of jobs that individuals with Plaintiff's RFC could perform. *See* AR at 54-55. Specifically, the ALJ stated that this hypothetical individual "should not reach overhead, but could reach in all other directions occasionally with either arm." *See id.* at 54. The vocational expert then provided

---

[4] Defendant's only response is that Plaintiff has waived this argument because he did not raise it during the Administrative process. Defendant is incorrect. Plaintiff raised this very same argument before the Appeals Council as a basis for his appeal. *See* AR at 190.

three occupation examples, which were gate guard, usher, and furniture rental consultant. *See* AR at 55. According to the Selected Characteristics of Occupations, each of these three job opportunities require "occasional" reaching. Reaching is broadly defined within the Selected Characteristics of Occupations as "extending hands and arms in any direction." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C, at C-3.

Based on the record, the Court finds that there is, at the very least, an apparent conflict between the vocational expert's testimony and the Selected Characteristics of Occupations that the ALJ failed to resolve. "Testimony that a claimant with overhead reaching limitations is capable of performing a job that the *Dictionary* describes as requiring 'reaching,' . . . creates at least an apparent conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." *Lockwood*, 914 F.3d 87, ___ (citations omitted). The ALJ failed to reconcile the vocational expert's testimony that a person with an overhead reaching limitation can perform three jobs that require "reaching" in "any direction" according to *Dictionary*. Thus, the Court finds that the ALJ failed in his duty to elicit an explanation from the vocational expert that would justify crediting his testimony that Plaintiff could perform these three jobs.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 10, is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 13, is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings consistent with this Memorandum-Decision and Order pursuant to sentence four of the Act; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: February 14, 2019
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Judge